## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

CHRIS, NATHAN, and JOHN DOE,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

      v.

MCKESSON, INC., DAVID CIFU, and THE
UNITED STATES OF AMERICA,

        Defendants.

CIVIL ACTION NO.: 4:19-cv-189

## <u>O R D E R</u>

This case was extraordinary when filed and has remained so.   Plaintiffs originally sought to file it under seal.  (<u>See</u> doc. 1, p. 1.)  While the Magistrate Judge provisionally sealed the Complaint, he explained that Plaintiffs' proffered reasons for filing under seal were "wholly inadequate to overcome the presumption that this Court's proceedings will be public."  (Doc. 2, p. 2.)  Based on the review of the proposed sealed Complaint, the Magistrate Judge was moved to discuss its extraordinary, and defective, character.  (<u>Id.</u> at pp. 5–8.)  The submission, which included "several hundred . . . pages of exhibits,"[1] (<u>id.</u> at p. 2 (emphasis omitted)), led the Magistrate Judge to require Plaintiffs' counsel to show cause why he should not be sanctioned. (<u>Id.</u> at pp. 8–9 (emphasis omitted).)   Although the Magistrate Judge determined no sanctions were appropriate, Plaintiffs required multiple attempts to submit a pleading that complied with the

---

1   The Magistrate Judge's description was charitable.   The pleading presented was approximately 500 pages long.   (<u>See</u> docs. 2-1 through 2-27.)

Federal Rules of Civil Procedure.   (See generally doc. 9.)   The procedural complexity and substantive ambiguity evident in the pleadings have not abated.

As the Court's most recent Order summarized: "Plaintiffs allege that defendants Dr. David Cifu and McKesson, Inc., a pharmaceutical company, have conspired to prevent veterans suffering from 'blast-induced traumatic brain injury' from accessing 'hyperbaric oxygen treatment,' which they allege is more effective than the pharmaceutical treatments provided."   (Doc. 84, p. 1.) Although the United States was not named in the operative Complaint, the Court granted its request to be substituted for Defendant Cifu, pursuant to the Westfall Act, 28 U.S.C. § 2679.   (Id. at p. 13.)   After granting that relief, the Court directed Plaintiffs to respond to defendants' motions to dismiss within thirty days.   (Id.)   Approximately six months have passed since the Court's Order and, not only have Plaintiffs failed to respond to the motions to dismiss, they have not filed anything at all.   (See, e.g., doc. 85.)   Plaintiffs have, therefore, disobeyed the Court's Order, failed to prosecute this case, and, by operation of the Court's Local Rules, the motions to dismiss stand unopposed.   See, e.g., L.R. 7.5.   While Plaintiffs' disregard of the Court's Order and apparent abandonment of this case provides one reason to dismiss it, see, e.g., Fed. R. Civ. P. 41(b); Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962), as discussed below, it is only one among many valid reasons.

## DISCUSSION

### I.    Plaintiffs' Standing

McKesson's Motion to Dismiss raises an issue that conceptually precedes all of the other issues raised; it contends that Plaintiffs lack standing to assert their claims.   (See doc. 45, pp. 23–24.)   McKesson contends that because two of the plaintiffs received hyperbaric oxygen therapy,

and all plaintiffs "fail to allege how McKesson's performance under [its contract with the Department of Veterans Affairs] caused them to suffer any actual, concrete, and particularized injury," they lack standing.  (Id. at p. 24.)  Because standing is a "threshold question in every federal case" that determines "the power of the court to entertain the suit," CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)), the Court must address that argument first.

"[T]he irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, [cit], and (b) actual or imminent, not conjectural or hypothetical, [cit.].  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (cleaned up) (citations omitted).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim."  Id. at 561 (internal quotation marks and citation omitted).

The Court's evaluation of Plaintiffs' standing is considerably impeded by their failure to respond to McKesson's Motion.  McKesson is certainly correct that Plaintiffs' theory of the injury is, charitably, eccentric.  Plaintiffs assert that Defendants had duties to provide the Veteran's Administration with full and accurate information, based their on "superior medical knowledge,"

3

and their "repeatedly holding [themselves] out to the public as looking out for the best interest of patients and as a resource to doctors and pharmacists for courses of treatment," but this assertion of duty is not clearly based on any legal authority. (See, e.g., doc. 10, pp. 40–44.) While the Court is, to say the least, skeptical of Plaintiffs' theories, their novelty and eccentricity are not, alone, disqualifying. However, notwithstanding the benefit of the doubt applicable at this stage in the litigation, the Court is fully satisfied, particularly given Plaintiffs' failure to respond to McKesson's Motion to Dismiss, that they have not borne their burden to establish their standing. See Lujan, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]."). To the extent that McKesson's Motion seeks dismissal for Plaintiffs' failure to establish their standing, it is **GRANTED**. (Doc. 44, in part; see also doc. 45, pp. 24–25.) Although that failure warrants dismissal, given the lingering ambiguity of Plaintiffs' theories, the Court will also discuss alternatively sufficient grounds for dismissal below.

## II.    Plaintiffs' Motion for Default Judgment

Before discussing Defendants' other theories in the motions to dismiss, the Court will address Plaintiffs' Motion for Default Judgment against Defendant Cifu. (Doc. 25.) Plaintiffs contend that service on Cifu was effected when an Assistant United States Attorney agreed to accept service. (Id. at pp. 3–4.) Although the parties vigorously dispute whether the manner of service was sufficient, based largely on their dispute of Cifu's status as an employee of the United States, (see doc. 32, pp. 2–6; see generally doc. 41), the United States' argument that the Motion for Default Judgment is procedurally defective is dispositive, (see doc. 32, pp. 6–7). As this Court has explained, "it is well established that there is a two step procedure for obtaining a default

judgment." <u>Progressive Mountain Ins. Co. v. Numbers Enters., LLC</u>, No. CV419-166, 2020 WL 8254282, at *1 (S.D. Ga. Dec. 8, 2020) (emphasis added) (internal quotation marks and citations omitted).   A party must first seek a clerk's entry of default, under Federal Rule 55(a), and *then* may seek a default judgment, under Federal Rule 55(b).   <u>Id.</u>   As Cifu points out, Plaintiffs have attempted to omit the first step and proceed directly to the second.   (<u>See</u> doc. 32, p. 1.) Regardless of the merits of Plaintiffs' substantive contentions, or the lack thereof, their Motion is properly denied.

Plaintiffs' reply in support of their Motion for Default Judgment does not meaningfully respond to Cifu's procedural argument.   (<u>See</u> doc. 41, pp. 1–2.)   Without citing to any authority, Plaintiffs assert that "[t]here is nothing in Rule 55 that says [a clerk's entry is a prerequisite for default judgment], and such a rule has not been adopted by the [Eleventh] Circuit."   (<u>Id.</u> at p. 1.) Plaintiffs assert, in a wholly conclusory fashion, that "[t]he reason a provision such as [Rule 55(a)] exists is to spare the Court the time to deal with the defendants who are lost in the judicial process and require a bit of assistance to move along."   (<u>Id.</u> at pp. 1–2.)   Plaintiffs' counsel's speculation on the intent of Rule 55(a) notwithstanding, and although the Court has not identified any Eleventh Circuit Court of Appeals opinion on point, the undersigned finds no grounds to disagree with prior courts' findings that "[t]he law is *clear* that these two separate steps [*i.e.*, a clerk's entry of default and a motion for default judgment,] cannot be combined into one."   <u>Progressive Mountain Ins. Co.</u>, 2020 WL 8254282, at *1 (quoting <u>Bardfield v. Chisholm Props. Circuit Events, LLC</u>, No. 3:09-cv-232, 2010 WL 2278461, at *6 (N.D. Fla. May 4, 2010) (collecting cases)) (emphasis added) (internal quotation marks omitted).   Plaintiffs' Motion for Default Judgment is, therefore, **DENIED**.   (Doc. 25.)

5

### III.    Defendants' Motions to Dismiss

Before the Court are three motions to dismiss.   (Docs. 31, 35 & 44.)   As the Magistrate Judge noted, after a status conference with the parties, those motions were not opposed when filed. (See doc. 81, p. 4.)   As discussed above, after resolving the disputed propriety of the United States' appearance in this case, the Court specifically directed Plaintiff to respond.   (Doc. 84, p. 13.)   Plaintiffs have not responded to that Order at all.    Defendant McKesson expressly noted that failure on the record and served a copy of that notice upon Plaintiffs' counsel.   (See generally doc. 85.)   Although the motions are unopposed, the Court must still resolve their merits.   See, e.g., Giummo v. Olsen, 701 F. App'x 922, 924 (11th Cir. 2017); see also, e.g., Brown v. Selene Fin. LP, No. 1:22-CV-04690-LMM-JEM, 2023 WL 3335060, at *4 (N.D. Ga. Apr. 10, 2023). "Treating the motion as unopposed permits the Court to decide the motion on the papers before it."   Brown, 2023 WL 3335060, at *4 (quoting Giummo, 701 F. App'x at 924) (internal quotation marks omitted).   For the reasons discussed below, each defendant has presented at least one meritorious basis for dismissal of Plaintiffs' claims.

Plaintiffs' First Amended Complaint asserts the following claims, as modified by the substitution of the United States for Dr. Cifu under the Westfall Act: (1) a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim against Cifu and McKesson; (2) a state-law negligence claim against the United States and McKesson; (3) a state-law negligent infliction of emotional distress claim against the United States and McKesson; (4) a state-law intentional interference with contract claim against the United States and McKesson; (5) a state-law fraudulent misrepresentation claim against the United States and McKesson; and (6) a state-law conversion claim against the United States and McKesson.   (See, e.g., doc. 10, pp. 3–4; see also doc. 84 at

13.)   Given the overlap in the claims, the Court will first address Cifu and McKesson's respective motions to dismiss the RICO claim.   (See doc. 31; doc. 45, pp. 5–6, 10–17.)   The Court will then address the United States' Motion to Dismiss the state-law claims.   (See doc. 35.)   Finally, the Court will address McKesson's Motion to Dismiss the state-law claims.   (See doc. 45, pp. 6–9, 17-23.)   Although the parties assert alternative arguments, the Court does not discuss them exhaustively.   Instead, the Court has identified facially meritorious arguments warranting dismissal of each claim.   As noted, the remaining alternative arguments, whatever their merits, are moot.

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).   However, this tenet "is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).   Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"   Reese v. Ellis, Painter, Ratteree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Iqbal, 556 U.S. at 678).   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" does not suffice.   Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.   Where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" and dismissal is proper.  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326-27 (1989) (stating that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

### A.      Motions to Dismiss RICO Claims

Cifu and McKesson assert, in the alternative, that Plaintiffs' RICO claim against them is barred by the applicable statute of limitations and that it fails to state a claim.[2]  (See doc. 31, pp. 5–15; doc. 45, pp. 5–6, 10–17.)  Both arguments implicate dismissal pursuant to Federal Rule 12(b)(6).  When the asserted defect in the pleadings is that the claims are time-barred, dismissal is only appropriate if the defect "is apparent from the face of the complaint."  Gonsalvez v. Celebrity Cruises Inc., 750 F.3d 1195, 1197 (11th Cir. 2013).  "A statute of limitations defense can support dismissal under Rule 12(b)(6) only if it is clear from the face of the complaint that the statute of limitations has run, and it appears beyond doubt that the plaintiff can prove no set of

---

2  Cifu also challenges personal jurisdiction, (doc. 31, pp. 4–5, 15–16), insufficient service, (id. at pp. 19–25), and venue, (id. at pp. 17–18).  Since, as discussed below, the RICO claims appear both time-barred and insufficient, the Court does not reach these alternative arguments.

facts that toll the statute." Valencia v. Universal City Studios LLC, No. 1:14-CV-00528-RWS, 2014 WL 7240526, at *3 (N.D. Ga. Dec. 18, 2014) (citations omitted).

"The statute of limitations for federal civil RICO actions is four years. Lehman v. Lucom, 727 F.3d 1326, 1330 (11th Cir. 2013). It 'begins to run when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering.' Id." Mitchell v. DHR, No. 22-10390, 2023 WL 3302872, at *2 (11th Cir. May 8, 2023). As Cifu and McKesson point out, Plaintiffs allege the "scheme" at issue was "implemented *at the latest in 2008* by McKesson . . . and Dr. Cifu." (Doc. 10, p. 17, ¶ 65; see doc. 31, p. 5; doc. 45, p. 6.) Dr. Cifu's allegedly fraudulent studies were published in 2012 and 2013, respectively. (See doc. 10, pp. 29–34.) The anonymous plaintiffs were allegedly injured and received the allegedly less effective pharmaceutical treatment even earlier. (See id. at pp. 10–14.) The kind of continuing injury Plaintiffs allege is simply not sufficient to extend the statute of limitations on their RICO claims beyond four years from its accrual. See, e.g., Lehman, 727 F.3d at 1331 (a RICO "plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period. [Cit.] By extension, when an injury is a continuation of an initial injury, it is not new and independent." (internal quotation marks, alterations, emphasis, and citations omitted)). It, therefore, appears that Plaintiff's RICO claims are time barred.[3]

Even if Plaintiffs' RICO claims were not time barred, as Cifu and McKesson point out, their factual allegations do not come close to supporting any such claim. (See doc. 31, pp. 6–15;

---

3 Plaintiffs' failure to oppose the motions to dismiss significantly impairs the Court's ability to analyze whether there is "no set of facts" which they might prove to toll the statute of limitations. Cf. Valencia, 2014 WL 7240526, at *3. To the extent that any such argument has not been waived by their failure to

doc. 45, pp. 10–17.)   "A private plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff."   Cisneros v. Petland, Inc., 972 F.3d 1204, 1211 (11th Cir. 2020); see also, e.g., DJ Lincoln Enters., Inc. v. Google LLC, No. 21-12894, 2022 WL 203365, at *2 (11th Cir. Jan. 24, 2022) ("A plaintiff suing under RICO must allege six elements . . . .   A claim must be dismissed if it fails to plausibly allege any one of [the] six elements." (citing Cisneros, 972 F.3d at 1211)).   As this Court has recognized, "[a]s the existence of an enterprise is a central element of a RICO claim, it must be pled with specificity, under Rule 9(b)."   Almanza v. United Airlines, Inc., 162 F. Supp. 3d 1341, 1353 (S.D. Ga. 2016) (internal citation and quotations omitted).   Although, as McKesson succinctly states, there are facially plausible arguments that "Plaintiffs have failed to sufficiently plead *any* of the elements of a civil RICO claim," (doc. 45, p. 17), the Court need not belabor the point.   See, e.g., DJ Lincoln Enters., Inc., 2022 WL 203365, at *2.   The Court focuses, therefore, on Plaintiffs' failure to allege a RICO "enterprise."

Cifu and McKesson point out that Plaintiffs have not alleged that McKesson itself, or any informal association formed between McKesson and Cifu, qualifies as a RICO "enterprise." (Doc. 31, pp. 8–9; doc. 44, pp. 12–14.)   RICO defines an "enterprise," as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."   18 U.S.C. § 1961(4).   Plaintiffs' Amended

---

respond, the Court has continued to analyze whether their factual allegations are sufficient to state a claim, notwithstanding the apparent time bar.

Complaint clearly asserts that Cifu and McKesson formed an enterprise through an association in fact. (<u>See</u> doc. 10, pp. 51–53.) The Supreme Court has explained that "it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." <u>Boyle v. United States</u>, 556 U.S. 938, 946 (2009). As Cifu and McKesson point out, Plaintiffs' allegations of the relationship between them are vague and wholly conclusory.[4] (Doc. 31, pp. 8–9; doc. 45, p. 14.) In <u>Cisneros</u>, the Eleventh Circuit Court of Appeals noted that "while [plaintiff's] complaint describes at length what she believes to be the fraudulent purpose of [the alleged enterprise], she offers no factual allegations from which [the court] could infer that [one participant] decided on this purpose together with [the others]. The complaint contains no allegations about specific interactions between [the participants], nor allegations regarding the origins or scope of the alleged scheme. Rather, [plaintiff] asks us to speculate that [one participant] decided at some point to pursue fraud, and that [the others] were involved in that decision." 972 F.3d at 1213. Plaintiffs' Amended Complaint here does no more and, like the Court of Appeals, this Court "will not indulge that speculation." <u>Id.</u> Plaintiffs have,

---

4  Several examples should suffice to illustrate the obvious insufficiency of Plaintiffs' allegations. The Amended Complaint alleges that Cifu and McKesson "functioned as a continuing unit as evidenced by the continuous, coordinated activities of McKesson and Cifu," (doc. 10, p. 53), which is wholly conclusory. Plaintiffs then assert that the "continuous, coordinated activity" consisted of two *entirely distinct*, if consistent, purposes. McKesson's purpose was, allegedly, to "continue to supply drugs to the VA," and Cifu's was to "continue to amass grant money to conduct and publish additional studies and advance his career." (<u>Id.</u>) Plaintiffs do not allege any communication establishing or supporting that "continuous, coordinated activity"; instead, they contend that the coordination occurred through the Department of Veterans Affairs. (<u>Id.</u> ("Based on Dr. Cifu's recommended pharmaceutical treatment protocol, *VA personnel used the wires and mails to request pharmaceuticals from McKesson . . .* and those were supplied by McKesson through the mails and other delivery methods." (emphasis added)). More egregiously, Plaintiffs wave at a relationship by alleging "McKesson and Dr. Cifu *were generally aware* of each others' conduct . . . ." (Doc. 10, p. 54 (emphasis added).) To even call such vague insinuations "speculative" seems excessively generous.

therefore, failed to sufficiently allege that Cifu and McKesson constituted an association-in-fact enterprise.  See, e.g., Almanza, 162 F. Supp. 3d at 1354 (noting that "RICO does not penalize parallel, uncoordinated fraud," and finding "an allegation that a group of defendants have engaged in collective or parallel conduct, by itself, does not plausibly demonstrate that those defendants ever reached an understanding that they would undertake such concerted action." (internal quotation marks and citations omitted)).

Accordingly, since Plaintiffs have, at least, failed to allege a RICO enterprise, to the extent that Cifu and McKesson move to dismiss that claim, their unopposed motions are **GRANTED**. (Docs. 31 & 44, in part.)   Moreover, since the Court substituted the United States for Cifu as defendant in Plaintiffs' state law claims, the only remaining claim against him was the RICO claim. (See doc. 84, p. 13.)   Cifu is, therefore, **DISMISSED** from this case, and the remaining arguments asserted in his Motion to Dismiss are **DISMISSED** as moot.   (Doc. 31, in part.).

## B.      The United States' Motion to Dismiss the State-Law Claims

Having been substituted as the proper defendant to Plaintiffs' state law claims, originally asserted against Cifu, the United States asserts that it is immune.   (See doc. 35, pp. 5–12.)   The doctrine of sovereign immunity bars suit against the United States unless it expressly consents. United States v. Mitchell, 463 U.S. 206, 212 (1983).   In an effort to "provide remedies for wrongful government actions through a waiver of sovereign immunity," Congress enacted the Federal Tort Claims Act ("FTCA").   Peirce v. United States, 813 F.2d 349, 351 (11th Cir. 1987); see 28 U.S.C. §§ 1346(b), 2671–2680.   The FTCA includes express exceptions for certain categories of claims, see 28 U.S.C. § 2680, and the United States asserts that several preclude the Plaintiffs' state law claims, (see doc. 35, pp. 6–10 (citing 28 U.S.C. § 2680(a), (h)).   "These

exceptions[, in § 2680,] must be strictly construed in favor of the United States and when an exception applies to neutralize what would otherwise be a waiver of immunity, a court will lack subject matter jurisdiction over the action." Zelaya v. United States, 781 F.3d 1315, 1322 (11th Cir. 2015) (quotations omitted). Although all of the exceptions invoked by the United States are facially plausible, and unopposed, the Court will focus on the "misrepresentation exception" as the most clearly applicable to Plaintiffs' allegations.

Plaintiffs' claims against Cifu and, by effect of the substitution, the United States, all assert that Cifu provided false or misleading information about traumatic brain injuries and hyperbaric oxygen therapy in published research. First, they allege that Cifu "had a duty to provide accurate and truthful information in his research findings," and "to make truthful and accurate recommendations regarding treatment," for traumatic brain injuries, and negligently breached that duty. (Doc. 10, pp. 65–67.) Second, they allege that Cifu negligently inflicted emotional distress by breaching his "duty to provide accurate and truthful information in his research findings." (Id. at 68–71.) Third, they allege Cifu intentionally interfered with veterans' contractual rights[5] to medical treatment by publishing studies that "mislead the VA[,] patients, doctors[,] and pharmacists about the effectiveness of [hyperbaric oxygen therapy] . . . ." (Id. at pp. 71–73.) Fourth, Plaintiffs allege that Cifu's publications constituted "fraudulent misrepresentation." (Id. at pp. 73–76.) Finally, Plaintiffs allege that Cifu converted a property right[6] to medical treatment

---

5  Plaintiffs contend that "[t]he eligibility / awarding of the Purple Heart [medal] and benefits guaranteed to [v]eterans who have been injured while serving in the military constitutes a valid contract between the VA and the recipients." (Doc. 10, p. 67.)

6  Plaintiffs contend that they "have the property right granted to [v]eterans to treat their physical injuries sustained in combat defending this country, a grant by Congress to those awarded or eligible for the Purple Heart. That right is super-protected by the 5th Amendment." (Doc. 10, p. 76.)

by publishing studies that "intentionally mislead the VA patients, doctors[,] and pharmacists about the effectiveness of [hyperbaric oxygen therapy] . . . "  (Id. at pp. 76–77.)  Pretermitting whether any such duties or rights exist, the United States is clearly correct that the claims are all, fundamentally, allegations of "misrepresentation," excluded from the FTCA's waiver of sovereign immunity.[7]  (See doc. 35, pp. 6–7 ("Here, all the claims pleaded against Dr. Cifu, and therefore against the United States by operation of the Westfall Act, boil down to the contention that he did not accurately convey the effectiveness of [hyperbaric oxygen therapy] for the treatment of [blast-induced traumatic brain injuries], whether through his research or in development of treatment protocols.").)

As the Eleventh Circuit has explained: "The misrepresentation exception [to the FTCA's waiver of sovereign immunity] bars any claim '[a]rising out of . . . misrepresentation, deceit, or interference with contract rights.'"  JBP Acquisitions, LP v. United States ex rel. F.D.I.C., 224 F.3d 1260, 1264 (11th Cir. 2000).  "The test in applying the misrepresentation exception is whether the essence of the claim involves the government's failure to use due care in obtaining and communicating information."  Id. (citation omitted).  The court is also clear that it is the substance, and not the presentation, of the claim which controls.  Id. ("[A] plaintiff cannot circumvent the misrepresentation exception simply through the artful pleading of its claims.").  Moreover, the Supreme Court has held that § 2680(h)'s misrepresentation exception

---

7  Plaintiffs' failure to respond to the United States' Motion to Dismiss concedes the United States' entirely plausible, if not facially obvious, characterization of their claims.  See L.R. 7.5.

"comprehends claims arising out of negligent, as well as willful, misrepresentation."  United States v. Neustadt, 366 U.S. 696, 702 (1961).

As Plaintiffs' state-law claims clearly arise from allegations that Cifu negligently or willfully failed to "use due care in obtaining and communicating information," they all fall within the misrepresentation exception to the FTCA's waiver of sovereign immunity.   The Court, therefore, lacks subject matter jurisdiction over them.   Accordingly, to the extent that the United States' Motion seeks dismissal of Plaintiffs' state-law claims pursuant to the misrepresentation exception to the FTCA, it is **GRANTED**.   (Doc. 35, in part.)   Since those are the only claims remaining against the United States, it is **DISMISSED** from this case and the remaining arguments asserted in its Motion to Dismiss are **DISMISSED** as moot.   (Doc. 35, in part.)

### C.    McKesson's Motion to Dismiss the State-Law Claims

McKesson seeks dismissal of Plaintiffs' state-law claims against it, pursuant to Rule 12(b)(6), on the grounds that those claims are all time-barred and fail to state a claim.   (See doc. 44; see also doc. 45, pp. 6–9, 17–23.)   As discussed above, the Court does not exhaustively evaluate the alternative arguments asserted.   As explained below, it is clear that Plaintiffs have failed to state claims against McKesson upon which relief may be granted.   Since the grounds discussed below are sufficient to merit dismissal of all the state-law claims against McKesson, the remaining alternative arguments are moot.

### 1.    Negligence

A negligence claim under Georgia law requires a plaintiff to plead duty, a breach of that duty, proximate causation and damages.   See, e.g., Black v. Ga. S. & Fla. Ry. Co., 415 S.E.2d 705, 707 (Ga. Ct. App. 1992).   McKesson reasonably questions whether Plaintiffs' Amended

Complaint alleges any one of those elements.  (See doc. 45, pp. 17–19, 17 n. 9.)  The most obviously meritorious of those arguments, in the Court's view, is Plaintiffs' failure to allege that McKesson's conduct caused Plaintiffs any injury.  (See id. at pp. 18–19.)  "Causation is further broken down into two elements: cause in fact and proximate cause."  Yearty v. Scott Holder Enters., Inc., 824 S.E.2d 817, 820 (Ga. Ct. App. 2019) (citing City of Richmond Hill v. Maia, 800 S.E.2d 573 (Ga. 2017)).  "Proximate cause is defined as that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred."  Id. (quoting Zwiren v. Thompson, 578 S.E.2d 862 (Ga. 2003)) (internal quotation marks omitted).

McKesson points out that the Amended Complaint expressly alleges that decisions about Plaintiffs' treatment are made by Department of Veterans Affairs physicians.  (See doc. 45, pp. 18–19 (citing doc. 10, pp. 10–14).)  Those physicians' exercise of their independent judgment breaks the chain of causation between any act McKesson allegedly committed and Plaintiffs' alleged difficulties in accessing hyperbaric oxygen therapy—assuming that they actually had any difficulty, (see, e.g., doc. 10, p. 13 ("Under the care of the VA and a doctor at an Air Force base, Nathan was prescribed [hyperbaric oxygen therapy]," albeit for a condition other than his traumatic brain injury.).  Stretching the limits of favorable construction, perhaps Plaintiffs allege that McKesson's conduct was the cause-in-fact of Plaintiffs' difficulty accessing hyperbaric oxygen treatment for their brain injuries.  (See doc. 10, p. 67.)  However, Plaintiffs expressly allege that, "[i]n 2010, the U.S. House of Representatives Veterans Affairs Committee was briefed on the healing aspects of oxygen-under-pressure . . . and provided case studies and publications from multiple peer-reviewed and respected sources to show [hyperbaric oxygen therapy's] efficacy in

16

treating unhealed [traumatic brain injuries]."   (Id. at p. 27.)   Given that public information, it is completely obscure how Plaintiffs contend that McKesson's failure to specifically promote it to physicians at the Department of Veterans Affairs affected the physicians' treatment decisions "in the natural and continuous sequence, *unbroken by other causes*."   Yearty, 824 S.E.2d at 820 (emphasis added).   Plaintiffs' negligence claim, therefore, fails because the Amended Complaint does not plausibly allege that any of McKesson's conduct caused their purported injury.

### 2.    Negligent Infliction of Emotional Distress

Plaintiffs' "Negligent Infliction of Emotional Distress" claim fails for the obvious reason that "[t]here is no independent tort in Georgia for negligent infliction of emotional distress." Holbrook v. Stansell, 562 S.E.2d 731, 733 (Ga. Ct. App. 2002) (citing Lee v. State Farm Mut. Ins. Co., 533 S.E.2d 82 (Ga. 2000)).   "Generally, in a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury."   Id. (quoting Ryckeley v. Callaway, 412 S.E.2d 826 (Ga. 1992)) (internal quotation marks and alteration omitted).   Although Plaintiffs allege physical injuries generally, as discussed above, they do not plausibly allege that those injuries were caused by McKesson.   There is no question, therefore, that they have alleged no "impact" sufficient to support emotional distress damages.

### 3.    Intentional Interference with Contract

To plead a claim for intentional interference with contract, under Georgia law, a plaintiff must allege "(1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of a contractual obligation or caused a party or a third party to discontinue or fail to enter

into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff."   Miller v. Lomax, 596 S.E.2d 232, 241 (Ga. Ct. App. 2004) (internal quotation marks and citation omitted).   The defect in Plaintiffs' claims is that, as McKesson points out, their allegation that "[t]he eligibility / awarding of the Purple Heart and benefits guaranteed to [v]eterans who have been injured while serving in the military constitutes a valid contract between the VA and the recipients," (doc. 10, p. 71), is simply wrong.   (See doc. 45, pp. 20–21.)   It is well-established that military healthcare services are governed by statute and not by a contract with the government.   See 5 U.S.C. § 301; Kelly-Leppert v. United States, 2021 WL 2853171, at *4 (Fed. Cl. 2021); see also Schism v. United States, 316 F.3d 1259, 1276 (Fed. Cir. 2002) (". . . Congress' authority and the various courts' . . . consistent interpretation thereof demonstrate that military health care benefits as a form of compensation have long been *exclusively a creature of statute, not contract*." (emphasis added)).   The failure to plausibly allege a valid contract is fatal to Plaintiffs' claim.   See, e.g., Cherokee Falls Invs., Inc. v. Smith, 445 S.E.2d 572, 575 (Ga. Ct. App. 1994) ("Absent an enforceable contract . . . [plaintiffs] could not recover . . . for any alleged tortious interference with their contractual relations . . . ." (citation omitted)).

### 4.    Fraudulent Misrepresentation

Georgia law recognizes that "[s]uppression of a material fact which a party is under an obligation to communicate constitutes fraud."   O.C.G.A. § 23-2-53.   "Under Georgia law, the tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages."   McCabe v. Daimler AG, 160 F. Supp. 2d 1377, 1368 (N.D. Ga. 2013). McKesson points out that the Amended Complaint does not allege any fact that suggests "it was

18

reasonable for [Plaintiffs], or the VA's physicians, to rely on a medical supply distributor, like McKesson, for expert information regarding [the] proper course of treatment."   (Doc. 45, p. 22.) Plaintiffs' allegations concerning their reliance on McKesson, to the extent that they are not wholly conclusory, might allege the fact that they relied, but not that their reliance was reasonable. Moreover, in showing reasonable reliance, plaintiffs alleging fraud "must show an inability to discover the information despite reasonable diligence . . . ."   Pinkerton & Laws Co., Inc. v. Roadway Exp., Inc., 650 F. Supp. 1138, 1147 (N.D. Ga. 1986).   Any contention that information concerning the effectiveness of hyperbaric oxygen therapy was unavailable is belied by Plaintiffs' express allegation that such information, including "multiple" previously published studies, was presented to Congress in 2010.   (Doc. 10, p. 27.)   Since Plaintiffs have not, and it appears could not, allege justifiable reliance on McKesson's alleged omission, their fraudulent misrepresentation claim fails.

### 5.      Conversion

Georgia law has codified the common-law tort of conversion.   See, e.g., Grant v. Newsome, 411 S.E.2d 796, 797 (Ga. Ct. App. 1991).   The statute, however, concerns interference with "possession" of "personalty."   O.C.G.A. § 51-10-1.   "Conversion is not available as a cause of action with regard to intangible property interests that have not been merged into a document." Internal Med. Alliance, LLC. v. Budell, 659 S.E.2d 668, 675 (Ga. Ct. App. 2008); see also RMS Titanic, Inc. v. Zaller, 978 F. Supp. 2d 1275, 1295 n. 15 (N.D. Ga. 2013) (noting, in dicta, "a claim for conversion of intangible property does not exist under Georgia law"); S. Cellular Telecom, Inc. v. Banks, 431 S.E.2d 115, 120 (Ga. Ct. App. 1993) (noting that appellant conceded "that under Georgia law, no action can be brought for conversion of an intangible property interest[,]" and

rejecting her argument that the law should be extended).   Given Plaintiffs' allegation that McKesson converted their "property *right to treatment*," (doc. 10, p. 76 (emphasis added)), their claim is simply not possible.   Defendants are, therefore, correct—if somewhat misguided—in pointing out that Plaintiffs have not alleged the standard elements of a Georgia conversion claim, including "actual possession," and a "demand for return of the property."   (See doc. 45, p. 23).

Accordingly, McKesson's unopposed Motion to Dismiss is **GRANTED, in part**, to the extent that it seeks dismissal of the state law claims asserted in Counts II-VI of Plaintiffs' Amended Complaint.   (Doc. 44, in part.)   Counts II-VI of the Amended Complaint fail to state any claim upon which relief can be granted, and are, therefore, **DISMISSED**.   See, e.g., Fed. R. Civ. P. 12(b)(6).   The remaining alternative arguments asserted in McKesson's Motion are **DISMISSED** as moot.   (Doc. 44, in part.)

## CONCLUSION

In summary, Plaintiffs' Motion for Default Judgment is **DENIED**.   (Doc. 25.)   Cifu's Motion to Dismiss is **GRANTED, in part**, to the extent that it seeks dismissal of Plaintiffs' RICO claim, and **DISMISSED, in part**, as moot.   (Doc. 31.)   The United States' Motion to Dismiss is **GRANTED, in part**, and **DISMISSED, in part**, as moot.   (Doc. 35.)   McKesson's Motion to Dismiss is **GRANTED, in part**, and **DISMISSED, in part**, as moot.   (Doc. 44; see also doc. 45.)   Since those dispositions resolve all of the pending claims against all Defendants, this case is

**DISMISSED**.   The Clerk of Court is **DIRECTED** to **CLOSE** this case.   Plaintiffs' remaining

motions are, therefore, **DISMISSED** as moot.[8]   (Docs. 21, 59 & 67.)

    **SO ORDERED**, this 1st day of August, 2023.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

8   This Court has previously noted Plaintiffs' frankly baffling assertions in this case.   (See doc. 84, p. 5 n. 4.)   In this Order, the Court has endeavored to address Plaintiffs' claims with the attention merited by any assertion that those who have suffered injury in service to this country are not receiving proper care.   In this undertaking, the Court has been positively impeded, rather than assisted, by the tactics adopted by Plaintiffs' counsel.   Nowhere is the inappropriateness of his conduct more evident than in his submission of a "Motion for Appointment of Special Prosecutor" in which he requests that "the court appoint a special prosecutor for the purpose of prosecuting" defendant McKesson's counsel. (Doc. 67, p. 1.)   Nowhere in that Motion does Plaintiffs' counsel identify any *legal* basis for this Court to undertake such a "prosecution."   (See generally id.)   That lack is most plausibly attributable to the fact that such authority does not exist.   See, e.g., Linda R. v. Richard V., 410 U.S. 614, 619 (1973) ("In American jurisprudence, at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").   Counsel's suggestion that this Court's authority to impose civil sanctions for contumacious conduct supports his request belies a fundamental misunderstanding of the distinction between civil and criminal law.   (See doc. 67, p. 2 n. 1.)   Moreover, even if the Motion were not legally fanciful, counsel's pugnacious language is wildly excessive, even in the context of the adversarial system.   The Court expects far more of those who take on the solemn obligation of appearing as counsel before this Court than Plaintiffs' counsel has given in this case. While prolonging these proceedings to address Plaintiffs' counsel's behavior is not warranted, he should not expect similar forbearance if he takes a similar approach to any subsequent cases in this Court.